USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/29/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
YOHANDRY JOSE CASTRO CONEO,

Petitioner,

       -against-

JUDITH ALMODOVAR, *et al*.

Respondents.
-----------------------------------------------------------------------X

25-cv-09850 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

      Petitioner Yohandry Jose Castro Coneo ("Petitioner") commenced this action by filing a petition for *writ of habeas corpus* on November 26, 2025, alleging that United States Immigration and Customs Enforcement ("ICE") is unlawfully detaining him. (Habeas Petition ("Pet."), ECF No. 1.) Petitioner subsequently filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction seeking (1) to prevent his transfer outside the jurisdiction of the Southern District of New York while his habeas petition is pending and (2) his immediate release from ICE custody. (Petitioner's ("Pet'r") Mot., ECF No. 3.) As a result, the Court issued a temporary order preventing Petitioner's transfer outside of the Southern District of New York while his *habeas* petition remains pending. (ECF No. 23.) The Court further determined, with the parties' agreement, that no formal show cause hearing was necessary, and that the pending TRO application would be resolved on the papers. (ECF No. 21.)

      For the following reasons, the Court GRANTS in part and DENIES in part Petitioner's motion.

1

**BACKGROUND**

Petitioner is a native and citizen of Venezuela. (Habeas Pet. ¶ 12.) On or about March 3, 2024, Petitioner entered the United States without inspection and was encountered by U.S. Customs and Border Protection ("CBP") at or near Roma, Texas. (Resps.' Opp. at 3, ECF No. 20.) Because Petitioner lacked documentation authorizing entry, CBP placed him in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). (*Id.*)

After asserting a fear of return to Venezuela, Petitioner received a credible-fear interview with an asylum officer. (Resps.' Opp. at 3.) After vacating a negative credible-fear determination with respect to Petitioner on March 8, 2024, the Immigration Judge terminated his expedited removal, and the Department of Homeland Security ("DHS") initiated standard removal proceedings under § 1229a, permitting Petitioner to seek asylum. (*Id.*)

That same day, Immigration and Customs Enforcement ("ICE") released Petitioner on his own recognizance pursuant to 8 U.S.C. § 1226, issued a Notice of Custody Determination (Form I-286), and enrolled him in the Alternatives to Detention ("ATD") program. (Decl. of Michael Charles ("Charles Decl.") ¶¶ 9–10, ECF No. 19.) Following his release, Petitioner was permitted to reside in the interior of the United States and has lived in Corona, Queens County, New York, with his wife and their two young children while his removal proceedings remained pending. (Habeas Pet. ¶ 35.)

On June 17, 2024, Petitioner was arrested by the New York City Police Department in Queens, New York, and charged with possession of a firearm. (Charles Decl. ¶ 10.) On March 25, 2025, ICE re-enrolled Petitioner in the ATD program, citing the June 2024 arrest. (*Id.* ¶ 11.)

On November 12, 2025, Petitioner appeared for a scheduled master calendar hearing at the New York Immigration Court located at 26 Federal Plaza. (Habeas Pet. ¶ 36.) At the conclusion

2

of that hearing, the Immigration Judge scheduled Petitioner's next hearing for September 2026. (*Id.*) As Petitioner exited the courtroom, ICE officers apprehended him without prior notice or warning. (*Id.*) Petitioner was taken into custody, transferred to the Orange County Correctional Facility, and has remained detained since November 14, 2025. (*Id.* ¶¶ 36–38.)

ICE asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) and has denied him a bond hearing on the ground that the Immigration Court lacks jurisdiction. (Habeas Pet. ¶ 1, 38.) Petitioner challenges his continued detention without immediate release, arguing that ICE and the Executive Office for Immigration Review ("EOIR") have improperly treated him as subject to mandatory detention under § 1225 notwithstanding his release into the interior and placement in standard removal proceedings under § 1229a. (*See generally* Pet'r Reply, ECF No. 22; Habeas Pet. ¶ 38.). As a result, Petitioner has not received an individualized custody determination under 8 U.S.C. § 1226(a), which he contends governs his detention. Petitioner now seeks relief from this Court. (*Id.*)

## LEGAL STANDARD

### I. Temporary Restraining Order

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "A plaintiff seeking a [TRO or] preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party to the suit, [the court's]

inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

"The district court has wide discretion in determining whether to grant a [TRO or] preliminary injunction." *Valenzuela Arias*, 612 F. Supp. 3d at 311 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (per curiam)). That being said, "[a] preliminary injunction is an extraordinary remedy," *Winter*, 555 U.S. at 24, and "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Med. Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). And "[w]hen deciding whether to issue a preliminary injunction, courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *We The Patriots USA, Inc.*, 17 F.4th at 279 (quoting *Winter*, 555 U.S. at 24).

## II. Section 2241 Petition

28 U.S.C. § 2241 "authorizes a district court to grant a *writ of habeas corpus* whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a *habeas* petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the *habeas* proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in *habeas* courts to 'hear and determine the facts and dispose of the matter as law and justice require.'" *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

**DISCUSSION**

Petitioner now moves for a temporary restraining order and preliminary injunctive relief, seeking to enjoin Respondents from (1) transferring Petitioner outside the jurisdiction of the Southern District of New York while his *habeas* petition remains pending, and (2) releasing Petitioner from custody. (Pet'r Mem. at 1, ECF No. 4.)  Petitioner argues that he is being unlawfully detained and that he is entitled to relief from this Court.

Petitioner argues that his detention under § 1225 is unlawful because he was not detained while "seeking admission" to the United States and that continued detention therefore violates the Due Process Clause. (Habeas Pet. ¶ 41.) Having lived in New York since March 2024 and been taken into ICE custody in the interior following a routine immigration-court appearance, Petitioner contends that his detention is governed by § 1226(a), which permits bond and requires an individualized custody determination. (Pet'r Mem. at 1–5.) Respondents counter that Petitioner is subject to mandatory detention under § 1225(b)(1)(B)(ii) because he was processed for expedited removal and his negative credible-fear determination was vacated, rendering him eligible only for discretionary parole. (Resps.' Opp. at 1, 5–9.) At bottom, Respondents' theory depends on the broader claim that Petitioner remains an "applicant for admission" subject to mandatory detention under § 1225 despite his release into the interior and placement in § 1229a proceedings. (*See generally id.*)

The Court addresses these contentions in turn.

I.  **Detention Under 8 U.S.C. § 1225(b)(2)**

   a.  **Likelihood on the Merits**

It is well established that "[t]o implement its immigration policy, the [g]overnment must be able to decide (1) who may enter the country and (2) who may remain here after entering."

*Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). For decades, these two inquiries have been recognized and treated as distinct. Indeed, "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Until three months ago, DHS recognized this dichotomy and operated under two separate statutory schemes governing the detention of noncitizens: (1) § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and (2) § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally. *See Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025). The Supreme Court further solidified this understanding. *See Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).").

DHS now appears to have departed from Supreme Court precedent and decades of established practice by taking the position that anyone physically present in the United States without having been legally "admitted"—regardless of the duration of their presence—falls under § 1225(b)(2), which mandates detention. *See Alvarez*, 2025 WL 3085032, at *1; *Romero v. Hyde*, ⸺ F. Supp. 3d ⸺, ⸺, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("[R]espondents' new interpretation is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." (internal citations omitted)). DHS takes this position in light of the Board of Immigration Appeals'

6

recent determination treating noncitizens who have entered the United States and those who have never entered as indistinguishable for purposes of detention. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).

Respondents' argument is not novel. Respondents defend the notion that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) and is therefore ineligible for bond. (Resps.' Opp. at 5-9.) Usually, when statutes are at issue, a court's starting point is analyzing the statutory text. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). This Court need not reinvent the wheel—numerous courts in the Second Circuit have already interpreted the differences between §§ 1225(b)(2) and 1226(a). A majority of these courts have determined that § 1225(b)(2) applies only to noncitizens who are actively "seeking admission" at or near the border, or who have been paroled into the United States.[1] *See, e.g.*, *Alvarez Ortiz*, 2025 WL 3085032, at *10 ("this Court finds that section 1225(b)(2) applies only to noncitizens actively 'seeking admission' at or near the border or who have been paroled."); *J.U. v. Maldonado*, 2025 WL 2772765, at *9 (E.D.N.Y. Sept. 29, 2025) ("This Court finds that the historical practice—under which § 1225(b)(2)(A) would not have applied to Petitioner—is consistent with the text, structure, and statutory scheme.").

In the instant action, Petitioner is a citizen and national of Venezuela who entered the United States without inspection in March 2024 and was subsequently released into the interior pending removal proceedings under 8 U.S.C. § 1229a. (Pet'r Reply at 2; Charles Decl. ¶¶ 8–10.) After his release, Petitioner resided in Queens, New York, with his wife and two young children

---

[1] Respondents further identify numerous cases holding that § 1226(a) applies when a noncitizen is detained within the United States instead of at or near the border. (*See* Resps.' Opp. at 8.) To date, the Court can only identify one case with this District in which detention was permitted pursuant to § 1225(b)(2) was permitted. *See Chen v. Almodovar, et al.*, 2025 WL 3484855, at *1 (S.D.N.Y. Dec. 4, 2025). This case, however, is outweighed by the overwhelming consensus of courts that reject DHS's departure from established legal precedent and practice.

and remained at liberty for more than a year before being taken back into ICE custody following a routine immigration-court appearance. (Habeas Pet. ¶¶ 35–36.) Under these circumstances, Petitioner was no longer in a posture of actively "seeking admission" at or near the border at the time of his re-detention.

### b. Irreparable Harm

Having found that Petitioner is likely being unlawfully detained pursuant to § 1225(b)(2), the Court next considers whether he will suffer irreparable harm.

Freedom from imprisonment—government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause. *See Cabral v. Decker*, 331 F. Supp. 3d 255, 263 (S.D.N.Y. 2018) (citing *Zadvydas v. Davis*, 533 U.S. at 690 (2001)). Indeed, the Second Circuit has established that an "alleged constitutional violation constitutes irreparable harm." *Torres-Jurado v. Biden*, 2023 WL 7130898, at *5 (S.D.N.Y. Oct. 29, 2023) (quoting *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) (collecting cases)); *accord Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999). In cases not dissimilar to this one, courts have "easily" found irreparable harm where a petitioner is being wrongfully detained pursuant to § 1225(b)(2). *See, e.g., Alvarez*, 2025 WL 3085032, at *11; *Guerrero Orellana v. Moniz*, 2025 WL 2809996, at *9 (D. Mass. Oct. 3, 2025); *Mosqueda v. Noem*, 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025).

Petitioner contends that his due process rights are being violated by his continued detention without an individualized custody determination and maintains that the appropriate remedy for this alleged unlawful detention is immediate release. (Pet'r Mem. at 8.) It is well established that the loss of physical liberty resulting from allegedly unconstitutional detention constitutes irreparable injury, even for minimal periods of time. *See Averhart,* 2021 WL 2383556, at *9.

Accordingly, regardless of the ultimate form of relief warranted, Petitioner's ongoing deprivation of liberty in the absence of preliminary injunctive relief satisfies the irreparable-harm requirement.

### c. Balance of Equities / Public Interest

The remaining preliminary injunction factors—the balance of equities and the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Where, as here, a petitioner alleges constitutional violations, the balance of hardships "tips decidedly in the [petitioner's] favor." *Torres-Jurado*, 2023 WL 7130898, at *5. Similarly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, —— F.4th ——, ——, 2025 WL 2621593, at *10 (1st Cir. 2025). Nevertheless, under § 1226(a), release on bond requires an individualized determination that the noncitizen does not pose a danger to the community and is likely to appear for future proceedings. 8 U.S.C. § 1226(a).

This is where Petitioner's argument begins to falter. Although not addressed in Petitioner's opening papers, Petitioner was arrested in June 2024 and charged with possession of a firearm. (Charles Decl. ¶ 10.) The Court acknowledges that it is presented with a limited record, and this decision does not hold that Petitioner is considered dangerous. However, based on the current record, the Court cannot justify Petitioner's immediate release for purposes of a temporary restraining order or preliminary injunction. As discussed in more detail below, the Court finds that the appropriate remedy is an individualized bond hearing pursuant to § 1226(a),[2] at which an immigration judge may assess flight risk and danger in the first instance.

---

[2] The Court acknowledges that district courts have released petitioners after finding that they were wrongfully detained pursuant to § 1225(b)(2). What distinguishes those cases from the Court's finding here is that the petitioners in those cases did not have prior arrests or convictions. *See, e.g.*, *Perez Agustin v. Joyce*, 2025 WL 3564494, at *1 (S.D.N.Y. Dec. 12, 2025) (petitioner had "no criminal record"); *Liu v. Almodovar*, 2025 WL 3458633, at *1 (S.D.N.Y. Dec. 2, 2025) (same); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 481 (S.D.N.Y. 2025) (same); *Villegas ex rel. Guzman Andujar v. Francis*, 2025 WL 3215597, at *7 (S.D.N.Y. Nov. 18, 2025) (same); *Rueda Torres v. Francis*, 2025 WL 3168759, at *1 (S.D.N.Y. Nov. 13, 2025) (same); *Goorakani v. Lyons*, 2025 WL 3632896, at *1 (S.D.N.Y. Dec. 15,

## II. Even If § 1225 Applies, Due Process Requires an Individualized Custody Determination

The Due Process Clause of the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993). Because Petitioner is not at the threshold of entry, Fifth Amendment due process protections attach to his detention. *See Velasques Rincon v. Garland*, 2025 WL 3122784, at *7 (S.D.N.Y. 2025) ("[T]o apply the entry-fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether.").

Accordingly, even assuming *arguendo* that Petitioner's detention were authorized under § 1225, the Constitution independently requires adequate procedural safeguards. The Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), as "the proper framework for determining when and what additional procedural protections are due." *Black*, 103 F.4th at 138; *see also Savane v. Francis*, 2025 WL 2774452, at *10 (S.D.N.Y. Sept. 28, 2025) (same). Those factors are:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335). The Court therefore turns to an examination of the *Mathews* factors.

---

2025) (same); *Rocano Buestan v. McShane*, 2025 WL 3496361, at *5 (S.D.N.Y. Dec. 5, 2025) (same); *Yao v. Almodovar*, 2025 WL 3653433, at *1 (S.D.N.Y. Dec. 17, 2025) (same); *Artiga v. Genalo*, 2025 WL 2829434, at *2 (E.D.N.Y. Oct. 5, 2025) (same); *Ye v. Maldonado*, 2025 WL 3521298, at *1 (E.D.N.Y. Dec. 8, 2025) (same).

### a. The Private Interest Affected

Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Here, Petitioner "does not contend that greater judicial-type procedures must be imposed upon the administrative actions of ICE than those already required by law; [rather, he] argues that the agency must comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (*citing Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)).

In similar circumstances, district courts have recognized that a noncitizen's "private interest affected" in avoiding detention is a "compelling one." *See Perez Flores v. Bondi*, 2025 WL 1921748, at *6 (W.D.N.Y. July 14, 2025); *see also Lopez Benitez*, 795 F. Supp. 3d at 495. And while "[t]he private interest here is not liberty in the abstract, but liberty in the United States," Petitioner has lived in the United States for more than a year pursuant to government authorization, developed substantial family ties, and has a pending application for asylum, all of which significantly strengthen his liberty interest. *Perez Flores*, 2025 WL 1921748, at *6. The first *Mathews* factor therefore heavily weighs in favor of Petitioner.

### b. The Risk of Erroneous Deprivation

A noncitizen subject to detention is guaranteed procedural safeguards, the most critical of which is an individualized bond hearing, allowing an immigration judge to evaluate the noncitizen's risk of flight and potential danger to the community. *See Black*, 103 F.4th at 152.

The Court does not dispute that Petitioner was charged with possession of a firearm. (Charles Decl. ¶ 10.) Nevertheless, Petitioner has been detained without a bond hearing solely on the asserted ground that the Immigration Court lacks jurisdiction. (Habeas Pet. ¶¶ 1, 38.) As a result, Petitioner has had no opportunity to appear before a neutral decisionmaker, testify on his own behalf, or seek release through an individualized custody determination. (*Id.* ¶ 38.) Nor has he been permitted to contest the assumption that he poses a danger to the community or a risk of flight while his habeas petition remains pending. (*Id*. ¶¶ 38, 51.) As Petitioner correctly argues, he has been deprived of his physical liberty "without lawful statutory authority and without due process." (Pet'r Mem. at 1.) *See Tumba v. Francis*, 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025); *Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (holding that detention "with no process at all—much less prior notice, a showing of changed circumstances, or an opportunity to respond—violates due process"). The second *Mathews* factor therefore weighs in Petitioner's favor.

    **c. The Government's Interest**

Finally, this Court acknowledges that Respondents' interest in detaining Petitioner might be strong in light of his previous arrest. (Charles Decl. ¶ 10.) In mandating the detention of noncitizens who have committed certain crimes, § 1226(c) reflects Congress' purpose of reducing the risk of flight and protecting the community. *See Demore v. Kim*, 538 U.S. 510, 518–19 (2003); *see also Jennings*, 583 U.S. at 303–04. It is also well established that the government has a legitimate and compelling interest in both of these aims. *Black*, 103 F.4th at 153.

The Court nonetheless concludes that these interests do not outweigh Petitioner's liberty interest. Petitioner lived at liberty for more than a year pursuant to government authorization, and Respondents identify no intervening circumstance justifying his immediate re-detention without

12

procedural safeguards. (Habeas Pet. ¶¶ 35–36.) Nor was Petitioner afforded any opportunity to challenge an assumption that he poses a risk of flight or danger to the community while his case proceeds. (*Id*. ¶¶ 38, 51.)

By contrast, the Government can fully protect its interests through procedures it already employs, including individualized bond hearings and alternatives to detention, which impose minimal additional administrative or fiscal burdens. *See Munoz Materano*, 2025 WL 2630826, at *14; *Black*, 103 F.4th at 153–54. Absent such a hearing, it is unclear whether Petitioner's continued detention meaningfully advances Respondents' asserted interests in community protection, and Respondents point to no particularized or heightened justification for detention without one. *See Perez Flores*, 2025 WL 1921748, at *7.

Accordingly, the third *Mathews* factor weighs in Petitioner's favor, and the Court concludes that Petitioner has been denied due process absent at least an individualized bond hearing.

## CONCLUSION

Petitioner's prolonged detention without an individualized bond hearing is unreasonable and violates due process. However, the Court declines—at this time—to grant Petitioner's request for immediate release. While Petitioner argues that immediate release is the appropriate remedy, Second Circuit precedent holds that where detention is unlawful for lack of process, the appropriate constitutional remedy is an individualized bond hearing at which the Government bears the burden of justifying continued detention. *See Black v. Decker*, 103 F.4th 133, 155–59 (2d Cir. 2024).

Accordingly, Petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) before an immigration judge, at which the Government must demonstrate by clear and convincing evidence that continued detention is necessary. (*Id.* at 159.) At that hearing, the immigration judge

must consider whether alternatives to detention would adequately serve the Government's interests in ensuring Petitioner's appearance and protecting the community. *Id.* If a bond is warranted, the immigration judge must also consider Petitioner's ability to pay in setting the amount. *Id.* at 158.

Respondents are therefore ORDERED to conduct an individualized bond hearing on or before January 12, 2026. If such a hearing is not conducted by that date, Respondents shall release Petitioner from custody. The Clerk of Court is directed to terminate the motion at ECF No. 3.

Dated: December 29, 2025
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge